UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ALEXANDER JOEL OSORIO-ASTUHUAMAN, | No. 1:26-cv-00602-TLN-CSK |
| Petitioner, | FINDINGS AND RECOMMENDATIONS |
| v. | |
| CHRISTOPHER CHESTNUT, et al., | |
| Respondents. | |

Petitioner Alexander Joel Osorio-Astuhuaman, a native of Peru who entered the United States on January 17, 2023, has filed a verified petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  Petitioner was initially detained by U.S Customs and Border Patrol inside the United States and was released on or around January 18, 2023 on his own recognizance.  On August 20, 2025, petitioner reported for a regular check-in appointment with U.S. Immigration and Customs Enforcement ("ICE") and was arrested and re-detained.  Petitioner has been in continuous detention since August 20, 2025.  This habeas action concerns petitioner's re-detention.  For the reasons that follow, the Court recommends granting the petition for a writ of habeas corpus and ordering petitioner's immediate release.

---

[1]  Petitioner paid the filing fee and is proceeding through counsel.  This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

1

## I.      FACTUAL BACKGROUND[2]

Petitioner is a native and citizen of Peru.  (ECF No. 1 at 4; ECF No. 8 at 5.)  On January 17, 2023, petitioner entered the United States without inspection at or near San Ysidro, California and was detained by U.S. Customs and Border Patrol.  (ECF No. 1 at 6-7; ECF No. 8 at 5.)  On or around January 18, 2023, petitioner was released on his own recognizance into the United States and referred to ICE Enforcement and Removal Operations ("ERO") Alternatives to Detention ("ATD") Program.[3]  (ECF No. 1 at 7; ECF No.8 at 10.)  On March 14, 2023, petitioner was issued a Notice to Appear charging petitioner pursuant to Immigration and Nationality Act ("INA") section 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled.  (ECF No.8 at 5-7.)   In addition, the Notice to Appear does not allege petitioner is an "arriving alien," although the Notice to Appear does include a place to designate this information.  (Id. at 5.)  Petitioner filed an application for asylum with the immigration court, and United States Citizenship and Immigration Services ("USCIS") later issued petitioner an employment authorization document (work permit) in the C8 category allowing petitioner to work for any employer without further restrictions or conditions.  (ECF No. 1 at 7.)

Petitioner complied with all requirements of his release.  (ECF No. 1 at 7; ECF No. 8 at 3; see ECF No. 10.)  On August 20, 2025, petitioner reported to the Bakersfield, California ICE office for a check-in.  (ECF No. 8 at 3.)  Petitioner was arrested and taken into custody.  (Id.)  Petitioner was not served with a warrant of arrest and was not provided notice of revocation of his order of release.  (ECF No. 1 at 8.)  Petitioner was not allowed to respond, provide evidence, or be heard before a neutral adjudicator prior to his re-detention.  (Id.)  Petitioner was not allowed to post a bond and remains in custody.  (Id.)  Petitioner has no criminal record.  (Id.)  Respondents do not dispute petitioner's factual allegations.  (See generally ECF No. 10.)

---

[2]   The factual background comes from the verified petition and exhibits separately filed by petitioner in support of the petition.  (ECF Nos. 1, 8.)  Respondents do not contest petitioner's factual allegations.  (See generally ECF No. 10.)

[3] There is no indication in the record that petitioner was paroled from custody pursuant to 8 U.S.C. § 1182(d)(5).

## II.     PROCEDURAL BACKGROUND

On January 24, 2026, petitioner filed his petition for writ of habeas corpus and request for injunctive relief.  (ECF No. 1.)  On January 26, 2026, the assigned district judge directed petitioner to file a motion for temporary restraining order if he was seeking emergency relief.  (ECF No. 6.)  Petitioner did not file a motion for temporary restraining order.  On January 30, 2026, this Court ordered petitioner to file the exhibits referenced in the petition no later than the close of business on February 2, 2026.  (ECF No. 7.)  On January 30, 2026, petitioner filed the exhibits referenced in the petition.  (ECF No. 8.)  On February 2, 2026, this Court ordered respondents to file an answer or motion to dismiss within seven days and ordered petitioner's reply/traverse to an answer or opposition to the motion dismiss due seven days after service of the answer or motion to dismiss.  (ECF No. 9.)  This Court ordered that if respondents disputed the factual allegations in the petition, respondents shall include with the answer or motion to dismiss all referenced/relevant portions of petitioner's A-File and other supporting documents.  (Id.)  On February 9, 2026, respondents filed an answer to the petition, did not dispute any of petitioner's factual allegations, and did not submit any documents.  (See ECF No. 10.)  On February 11, 2026, petitioner filed a reply to the answer.  (ECF No. 11.)  Briefing is now complete.

## III.    LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

///

3

## IV.    DISCUSSION

Generally, noncitizens are subject to civil immigration detention only if the noncitizen presents a risk of flight or danger to the community.  See Zadvydas, 533 U.S. at 690 (holding that 8 U.S.C. § 1231(a)(6) does not authorize indefinite detention).  Petitioner challenges his continued detention based on the violation of the following: (1) the Fifth Amendment substantive due process clause; (2) the Fifth Amendment procedural due process clause; (3) violation of 8 U.S.C. § 1226(a); and (4) the Accardi doctrine and non-statutory ultra vires action.  (ECF No. 1 at 16-20.)  Respondents do not argue that petitioner is a flight risk or a danger to the community and instead argue that petitioner's detention is mandatory under 8 U.S.C. § 1225(b)(2) because he is an applicant for admission, and he is ineligible for a bond hearing.  (ECF No. 10 at 1-2.)  Respondents cite Buenrostro-Mendez v. Bondi, 2026 WL 323330 (5th Cir. Feb. 6, 2026), in support of their position that § 1225(b)(2)(A) is applicable here.  ((ECF No. 10 at 1.)  Respondents also argue that petitioner does not possess a right to freedom from immigration detention in any form other than the form provided by Congress.  (Id. at 2.)  In the alternative, respondents request that the Court stay this matter pending resolution of the appeal in Rodriguez v. Bostock, No. 25-6842 (9th Cir.).  (Id.)

### A.    Statutory Claim (Petitioner's Third Claim)

The first issue here is whether petitioner, who has no criminal record and has lived in the United States since January 2023 is subject to discretionary release under § 1226(a) as petitioner contends, or whether, petitioner is now subject to mandatory detention under § 1225(b)(2)(A), as respondents argue.  8 U.S.C. § 1225(b)(2) mandates detention during removal proceedings for applicants "seeking admission" and does not provide for a bond hearing.  8 U.S.C. § 1226(a) "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal."  Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022).  Under Section 1226(a), the Government has broad discretion whether to release or detain the individual.  See id.  Section 1226(a) provides several layers of review for an initial custody determination and it confers "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right

4

to seek a new hearing when circumstances materially change." Id. at 1202.  Respondents contend § 1225(b)(2)(A) applies because petitioner is an "applicant for admission" and therefore subject to mandatory detention.  (ECF No. 10 at 1-2.)

The Court concludes that § 1226 applies to petitioner because petitioner was previously released on his own recognizance into the United States in January 2023.[4]  (ECF No. 1 at 7; ECF No. 8 at 10.)  Respondents do not dispute this fact.  (See ECF No. 10.)  This Court agrees with and joins the majority of courts nationwide, including the Eastern District of California, in rejecting respondent's new interpretation[5] of Sections 1225 and 1226.  See Rodriguez Vazquez v. Bostock, 2025 WL 2782499, at *1, 21-22 (W.D. Wash. Sept. 30, 2025) (concluding, after a thorough analysis, that "the government's [interpretation of § 1225] belies the statutory text of the [Immigration and Nationality Act], canons of statutory interpretation, legislative history, and longstanding agency practice"); J.Y.L.C. v. Bostock, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025) (collecting more than thirty cases rejecting the government's assertion that § 1225 empowers DHS to arrest and hold a noncitizen present without legal status who has spent years in the U.S.); Cardona-Lozano v Noem, 2025 WL 3218244, at *6 (W.D. Tex. Nov. 14, 2025) ("Repeatedly, [district courts across the country] have found that DHS and the [Board of Immigration Appeals'] construction of the [Immigration and Nationality Act] is incorrect and that petitioners who have long resided in the United States but are being held under § 1225 are entitled to relief.") (collecting cases)); Faizyan v. Casey, 2025 WL 3208844, at *5 (S.D. Cal. Nov. 17, 2025) (holding that § 1226 applies to a petitioner who "DHS has consistently treated" as subject to discretionary detention and "who has been residing in the United States for two years" (internal quotation marks and citation omitted)); Josue I.C.A. v. Lyons, 2025 WL 3496432, at 3 n.6 (E.D. Cal. Dec. 5, 2025) (collecting cases); Morales-Flores v. Lyons, 2025 WL 3552841, at

---

[4]  In the petition, petitioner contends that the issuance of the Warrant of Arrest (Form I-200) at the time of petitioner's re-detention indicates that § 1226(a) applies to him.  (ECF No. 1 at 7.) This Court does not address this argument because a copy of the Warrant of Arrest (Form I-200) is not in the court record.

[5]  Until DHS changed its policy in July 2025, the Government consistently applied Section 1226(a), not Section 1225(b)(2), to noncitizens residing in the United States who were detained by immigration authorities and subject to removal.  See Rodriguez Diaz, 53 F.4th at 1196.

*3 (E.D. Cal. Dec. 11, 2025) (collecting cases) ("Courts nationwide, including this one, have overwhelmingly rejected respondents' arguments and found DHS's new policy unlawful.").

"These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [petitioner], living in the interior of the country." Salcedo Aceros v. Kaiser, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases).  By contrast, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." Guerro Lepe v. Andrews, 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases).  This Court incorporates and adopts the thorough and persuasive reasoning of the district court in Lepe, 2025 WL 2716910, at *3-9.

Further, respondents' reliance on Buenrostro-Mendez, 2026 WL 323330, is unavailing.  In Buenrostro-Mendez, the Fifth Circuit recently agreed with respondents' interpretation of § 1225(b)(2).  This Court agrees with the district court in Gurvinder Singh v. Chestnut, 2026 WL 413839 (E.D. Cal. Feb. 14, 2026):

> Two courts of appeal have addressed whether 8 U.S.C. § 1225(b)(2)(A) applies to noncitizens who have lived in the United States for years without having been admitted.  See Castañon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1060-62 (7th Cir. 2025) (concluding that government was not likely to prevail on the merits that petitioner was subject to mandatory detention under § 1225(b)(2)(A)); Buenrostro-Mendez v. Bondi, --- F.4th ---, Nos. 25-20496, 25-40701, 2026 WL 323330 (5th Cir. Feb. 6, 2026) (finding petitioners were subject to mandatory detention under § 1225(b)(2)(A)).  Respondents cite to the Buenrostro-Mendez decision.  Doc. 9 at 1.  The Court finds the analysis in Castañon-Nava and in the dissent in Buenrostro-Mendez to be more persuasive on the statutory interpretation issue.  In any event, the Buenrostro-Mendez decision did not address the due process claim at issue in the present case."

Gurvinder Singh, 2026 WL 413839, at *1 n.1.  This Court does not find Buenrostro-Mendez to be persuasive for the reasons provided above.  See also Singh v. Baltazar, 2026 WL 352870, at *3-6 (D. Colo. Feb. 9, 2026) (rejecting the Buenrostro majority in its interpretation of § 1225 as nonbinding and highlighting the Seventh Circuit Court of Appeals' disagreement with the

Buenrostro majority) (citing Castanon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1052 (7th Cir. 2025)); Tomas Nicolas v. Warden, 2026 WL 364399, at *3 n.3 (S.D. Ind. Feb. 10, 2026) (disagreeing with Buenrostro majority and declining to follow); Chachipanta Cando v. Bondi, 2026 WL 357551, at *5 n.6 (D. Neb. Feb. 9, 2026) (same); Aroca v. Mason, 2026 WL 357872, at *15 n.40 (S.D. W.Va. Feb. 9, 2026) (same).  In addition, as in Gurvinder Singh, petitioner raises due process claims, which the court in Buenrostro-Mendez did not address, and which the Court turns to next.

Following the majority of courts, this Court also rejects the government's new interpretation of 8 U.S.C. § 1225(b)(2)(A) and their contention that petitioner is an "applicant for admission" subject to § 1225(b)(2).  This Court finds that petitioner is detained under 8 U.S.C. § 1226(a) and its implementing regulations because petitioner was expressly released on his own recognizance into the country, he has resided in this country for 2.5 years since his release in January 2023, and petitioner's August 2025 arrest and re-detention were not upon his arrival to the United States.  As such, petitioner should have been provided a bond hearing before his re-detention.

### B. Due Process Claims (Petitioner's First and Second Claims)

Petitioner also argues he has a fundamental liberty interest in freedom from imprisonment pursuant to the Fifth Amendment, and has a liberty interest in not being incarcerated after prior release without pre-custodial hearing or notice.  (ECF No. 1 at 16-18.)  Respondents argue petitioner's due process claims fail because petitioner does not possess a right to freedom from immigration detention in any form other than the form provided by Congress.  (ECF No. 10 at 2.)  Respondents' asserted compliance with § 1225(b)(2)(A) does not demonstrate the government has satisfied the requirements of the Due Process Clause, "which of course constitute[s] the supreme law of the land[.]"  Tot v. United States, 319 U.S. 463, 472 (1943) (Black, J., concurring).

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law.  U.S. Const. amend. V.  "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due

process protection." Foucha v. Louisiana, 504 U.S. 71, 80 (1992). "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary." Tinoco v. Noem, 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690).

The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147-49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. See id. (finding due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, his "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." Id. at 481-84.

Here, petitioner's initial detention and subsequent release on his own recognizance

8

pursuant to § 1226 in January 2023 are similar because it allowed petitioner to live in the United States, subject to immigration supervision, but free of custody for over 2.5 years.  Such time allowed petitioner to form "enduring attachments of normal life."  Morrissey, 408 U.S. at 482.  This Court finds that petitioner's original release and time out of custody gave rise to a constitutionally protected liberty interest.

Petitioner's release pursuant to 8 U.S.C. § 1226(a) was premised upon a finding that, at the time of petitioner's release, he was not dangerous nor a flight risk.  See 8 C.F.R. § 1236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in [8 U.S.C. § 1226](c)(1), under the conditions at section [8 U.S.C. § 1226](a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."); Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018); F.M.V. v. Wofford, 2025 WL 3083934, at *1 (E.D. Cal. Nov. 4, 2025).  In light of all of the forgoing, the Court finds that petitioner's prior release pursuant to 8 U.S.C. § 1226(a) created a reasonable expectation that he would be entitled to retain his liberty as long as he was not a flight risk and did not pose a danger to the community.  See Perry v. Sindermann, 408 U.S. 593, 601-03 (1972) (finding reliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest); F.M.V., 2025 WL 3083934 at *4.  This Court concludes that petitioner has a protected liberty interest in his release.  See Guillermo M. R. v. Kaiser, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is inherent in the Due Process Clause"); Ortega v. Kaiser, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest); F.M.V., 2025 WL 3083934 at *4-5.

Next, the Court turns to what procedures are necessary to ensure that the deprivation of that protected liberty interest meets the demands of the Constitution.  The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to

removal proceedings." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context). In applying the Mathews test to a procedural due process claim to a detention under 8 U.S.C. § 1226, the Ninth Circuit explained that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted). Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. Mathews, 424 U.S. at 335.

First, petitioner has a clear interest in remaining free from detention. "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). For over 2.5 years, petitioner was free from custody before his re-detention. During that time, petitioner obtained a work permit. (ECF No. 1 at 7.) The duration of his conditional release elevates and underscores his interest in liberty. See Pinchi v. Noem, 2025 WL 2084921, at *3 (N.D. Cal. July 25, 2025) (in the past five years, petitioner developed "extensive relations of support and interdependence" that "underscore the high stakes of [his] liberty."); Ortega v. Bonnar, 415 F. Supp. 3d 963, 963 (N.D. Cal. 2019) (holding that petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community).

The second Mathews factor also weighs in petitioner's favor. "The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing." See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Again, civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight

10

or danger to the community.  See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023).  Respondents do not contend that petitioner is or was a flight risk or a danger to the community.  (See generally ECF No. 10.)  In addition, respondents do not contend that petitioner has a criminal record.  (Id.)

Here, petitioner has been detained since August 20, 2025, without being given an individualized bond hearing to evaluate whether petitioner is a flight risk or a danger to the community.  No neutral arbiter under 8 U.S.C. § 1226 has determined whether petitioner is a flight risk or a danger to the community.  Respondents must demonstrate that petitioner's re-detention is reasonably related to a valid government purpose.  See Zadvydas, 533 U.S. at 690; see, e.g., Rodriguez Diaz v. Kaiser, 2025 WL 3011852, at *11 (N.D. Cal. Sept. 16, 2025) ("If respondents wish to establish that re-detention is warranted by raising the effect of . . . [petitioner's] six alleged bond violations, a hearing before a neutral adjudicator provides a forum to do so."); see also Cajina v. Wofford, 2025 WL 3251083, at *1, 6 (E.D. Cal. Nov. 21, 2025) (ordering petitioner's immediate release and enjoining and restraining respondents from re-detaining petitioner absent a pre-detention hearing, despite petitioner being charged with driving under the influence).

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws, but respondents' interest in detaining petitioner without a hearing is "low."  Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025).  Detention hearings in immigration courts are routine, and impose a "minimal cost."  Doe, 787 F. Supp. 3d at 1094.  In addition, here, the government's interest is even lower because petitioner was previously released on his own recognizance pursuant to § 1226 after immigration officials determined he was not a flight risk or danger to the community, he lived in the country for over 2.5 years on release, he obtained employment authorization, and he has no criminal record.  See Pinchi, 2025 WL 1853763, at *2.

Overall, balancing these factors, the Court finds that the Mathews factors weigh in favor of finding petitioner is entitled to a bond hearing, and petitioner should have been provided such a hearing before he was detained.  "An essential principle of due process is that a deprivation of

11

life, liberty, or property be <u>preceded</u> by notice and opportunity for hearing appropriate to the nature of the case." <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added).  In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a predeprivation hearing before their parole can be revoked.  <u>Morrissey</u>, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend to the context of immigration detention." <u>F.M.V.</u>, 2025 WL 3083934 at *6 (collecting cases).  Respondents point to no reasons a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process." <u>Guillermo M. R. v. Kaiser</u>, 791 F. Supp. 3d at 1036.  Accordingly, the Court finds that petitioner is also entitled to relief on his due process claims.

### C.   Petitioner's Other Claim for Relief

In light of the Court's recommendation that petitioner's requested relief be granted on claims one, two and three (violation of § 1226 and violation of due process), petitioner's remaining habeas corpus claim (claim 4) need not be resolved.

## V.   RESPONDENTS' REQUEST TO STAY

Respondents' alternative request that this matter be stayed pending a ruling by the Ninth Circuit in <u>Rodriguez v. Bostock</u>, No. 25-6842 (9th Cir.) should be denied.

## VI.   CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED.

2. Respondents be ordered to IMMEDIATELY release petitioner Alexander Joel Osorio-Astuhuaman and be ordered to provide petitioner with a copy of the release order at or near the time of release.  If respondents have custody of petitioner's documents (e.g., identification, passport, work permit, Social Security card, etc.), respondents shall return those to petitioner at the time of release.

3. Respondents be ENJOINED AND RESTRAINED from re-detaining petitioner unless

the government demonstrates, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

4. The parties be directed to file, within **seven days** of the adoption of these findings and recommendations, a joint status report addressing petitioner's status.

5. The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within **seven** days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 2, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/Astu602.157/2

13